No. 40,521

Florence Evelyn Hoppe, *Appellee*, v. Raymond Edward Hoppe, *Appellant.*

(312 P. 2d 215)

Opinion filed June 8, 1957.

*Orval J. Kaufman,* of Wichita, argued the cause, and *Lawrence Weigand, Lawrence E. Curfman, Byron Brainerd, Charles W. Harris, J. Ruse McCarthy, Thomas A. Wood,* and *Donald A. Bell,* all of Wichita, were with him on the briefs for the appellant.

*Chester I. Lewis, Jr.,* of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Wertz, J.: This was an action by a wife for a divorce on the grounds of extreme cruelty and gross neglect of duty, asking for control and custody of the minor child and other equitable relief.

Defendant's answer denied plaintiff's charges and asked that the prayer of her petition be disallowed.

Plaintiff filed a bill of particulars setting out the acts of extreme cruelty and gross neglect of duty relied upon under the pleadings and listing a chain of events from shortly after their marriage until the time of the filing of this action. The trial court granted plain-

tiff a divorce on the grounds alleged in the petition, awarded her the custody and control of the minor child, ordered defendant to pay a weekly specified sum for the child's support and maintenance, and granted plaintiff judgment for $500.00 alimony.

Defendant appeals, specifying as error that the evidence of plaintiff and of her corroborating witness was insufficient to justify the granting of a divorce and the court erred in failing to set aside to defendant real estate located in the state of Pennsylvania.

Whether plaintiff's evidence and that of her corroborating witness was sufficient to justify the trial court's granting her a decree of divorce requires a review of the testimony. We do not deem it necessary to narrate in detail all the evidence introduced on behalf of plaintiff. The pertinent part, however, is summarized below:

Plaintiff was an English working girl and defendant a member of the Marine Corps stationed in England, where they met and were married in December, 1947, and lived with plaintiff's grandparents in London until defendant with his wife returned to the United States. They rented an apartment in Pennsylvania in October, 1948, and lived there until November, 1951. The child was born in September, 1951. Plaintiff worked from November, 1948, to December, 1950, and made a substantial contribution toward the maintenance of the household. During that time defendant was attending a radio and television school. In November, 1951, the parties made a down payment on a home in Bristol, Pennsylvania. They lived together in the home until July, 1953, when plaintiff and the child visited her family in England, returning March 2, 1954. The latter part of that month, the plaintiff, taking the child with her, left the home in Bristol and came to Kansas, where she filed suit for divorce in October, 1955.

The testimony discloses the course of defendant's conduct. From the time the parties arrived in Pennsylvania in 1948 they started quarreling over money matters. Plaintiff was working and contributing a substantial sum toward household expenses while defendant was attending a trade school. During these quarrels defendant used vile and abusive language toward plaintiff. He refused to give her an allowance even while she was working. He was rude to her friends. He would not take her out either to visit friends or on other occasions. When the plaintiff became pregnant he attempted to persuade her to take pills which would cause a miscarriage. Before and after the child was born he denied its

parentage to the plaintiff and to fellow employees. At the time plaintiff was taken to the hospital for the birth of the child he refused to visit her there. When because of the couple's numerous arguments the plaintiff, seeking to aid the marriage, often tried to induce the defendant to go with her to a minister, he consistently refused to do so. When plaintiff finally suggested they could no longer live together and they should obtain a divorce, defendant threatened to either kill or disfigure her if she left him. In 1954, conditions became so unbearable that she took the child and left the home. Defendant, in an attempt to contact her, wrote plaintiff's relatives in England, who forwarded the letter which she received in October, 1955, wherein the defendant made the threat that if she did not get in touch with him he was going to feel very, very sorry for her. Immediately preceding the trial of this case, defendant told plaintiff:

"I don't know what I am going to do about you yet."

Mrs. Catherine Coulter of Croydon, Pennsylvania, testified by deposition that she had known the parties since October, 1948; that they rented an apartment on the same floor as hers, living there until November, 1951. During this period they were always arguing and defendant was cursing and swearing; in fact, they quarreled every day or so during the entire period and defendant called the plaintiff a bitch quite often. She testified that she and her husband took plaintiff to the hospital for the birth of the child and when defendant arrived home from work and upon her advising him that plaintiff was in the hospital and he should go over,

"He said he was not going over, he was going to bed. And not to call him all day as it didn't matter and he didn't want to be bothered, and he went to bed."

She stated she never knew defendant to take plaintiff out but once and further testified:

"Q. Did you ever hear any of these arguments between Mr. and Mrs. Hoppe as to who the father of the child was?

"A. No, not who. He always just said it wasn't his child. 'It is not my baby. I am not going to have it.'"

No useful purpose could be gained by relating other conduct testified to by plaintiff. Suffice it to say, there was evidence which tended to show a course of conduct on the part of defendent toward the plaintiff extending over a period from 1948 until the time she left home in 1954 which humiliated and degraded her,

and that defendant's deliberate and persistent mistreatment of plaintiff was sufficient to undermine her health and seriously affect her both physically and mentally. An able and experienced trial judge heard and saw the parties. This advantage enabled him to judge more fairly and accurately the credibility and probative value of their testimony than this court can. Much weight is to be given to the findings of the trial court in cases of this kind. We are of the opinion that the unjustifiable and long-practiced course of conduct by defendant utterly destroyed the legitimate ends and objects of the marriage and constituted extreme cruelty, even though no actual physical or personal violence was inflicted. (*Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127.)

Defendant claims that the corroborating testimony was insufficient because the witness had not seen the parties subsequent to the time they left her apartment in November, 1951. The testimony of the witness corroborated plaintiff's evidence very fully as to the unrelenting nagging, swearing and accusations, and denial of the parentage of the child for over a period of three years. It is not necessary that the corroboration support plaintiff's allegations throughout the course of mistreatment or as to every detail of plaintiff's testimony. The principal reason for the requirement of corroboration has been and is for the prevention of collusion between the parties to a divorce action. It is not essential that it alone sustain the judgment or that it support the plaintiff's testimony as to all of the allegations. Such a strict requirement might tend to thwart justice owing to the privacy of the relations between the parties. There is nothing in the record in the instant case to indicate collusion; and the corroboration fulfilled the requirements of our code. (G. S. 1949, 60-1509.) (*Craig v. Craig,* 112 Kan. 472, 480, 212 Pac. 72.)

In *Tuley v. Tuley,* 168 Kan. 106, 211 P. 2d 95, we said that corroborating testimony may be circumstantial as well as direct. A decision based on testimony corroborative in character and convincing to the trier of the facts will not be disturbed on appeal.

The corroboration required by the statute (G. S. 1949, 60-1509) providing that a divorce shall not be granted upon the uncorroborated testimony of either husband or wife or both of them does not mean that it is necessary that the corroboration support plaintiff throughout the course of mistreatment or as to every detail of her testimony. However, the corroboration should be such as will

tend to establish some fact or facts testified to by plaintiff so as to make her testimony more probable and legally acceptable. Corroborating evidence is that which when added to the original evidence makes it stronger and more credible and the remoteness of the acts which are corroborated as affecting the sufficiency of the corroboration in general is a question largely within the discretion of the trial court. See the extensive annotation in 15 A. L. R. 2d, beginning at page 170, 193-198, inclusive.

Defendant next contends that the court erred in failing to set aside the Pennsylvania real estate to him and invites our attention to G. S. 1949, 60-1511, which in substance provides that when a divorce shall be granted the court shall make a division of the real and personal property as may appear to be just and reasonable, and that it was a reversible error for the trial court to fail to do so. In the instant case there is nothing in the record to show whether the payments made on the Pennsylvania residence were made under a contract of purchase or whether a deed was executed and if so, to whom. There was no request made by either party to the trial court to determine the rights of the parties to this property. The matter was not called to the attention of that court on the motion for a new trial nor is the matter contained in defendant's notice of appeal. It is raised for the first time in defendant's specifications of error in this court.

We have repeatedly held that where it does not affirmatively appear that a question raised on appeal was presented to and determined by the trial court, this court does not consider it on review. (*Holton v. Holton*, 172 Kan. 681, 243 P. 2d 222; *West's Kansas Digest*, Appeal and Error, § 169; *Hatcher's Kansas Digest*, Appeal and Error, § 304.) In this case it is manifest that the trial court had no opportunity to consider, reconsider or correct the error here complained of which might have been assigned as grounds for a new trial. Moreover, neither counsel for the plaintiff nor for the defendant has seen fit to cite any authority to this court on the contention raised. However, this court has made a research within its limited time and will consider the question.

The defendant placed too strict a construction on the mentioned statute. It was the intent of the Legislature that the court should make a division of only the property within its jurisdiction. Any attempt by one state to give to its courts jurisdiction beyond its own limits of real property situated in another state is an usurpa-

tion of authority and all judicial proceedings in virtue thereof are void, and a statute, however comprehensive, should not be construed as conveying such jurisdiction. In a divorce proceeding the courts of one state cannot by the decree directly affect the legal title to land situated in another state unless allowed that effect by the laws of the state in which the land is situated. (*Cummings v. Cummings,* 138 Kan. 359, 26 P. 2d 440.) (See also Annotation, 51 A. L. R. 1081.)

One of the leading and exhaustive opinions on this subject is *Fall v. Fall,* 75 Neb. 104, 106 N. W. 412, 75 Neb. 120, 113 N. W. 175; *Fall v. Eastin,* 215 U. S. 1, 54 L. Ed. 65, 30 S. Ct. 3, 23 L. R. A. (N. S.) 924, 17 Ann. Cas. 853, wherein it was stated by the United States Supreme Court that:

"While a court of equity acting upon the person of the defendant may decree a conveyance of land in another jurisdiction and enforce the execution of the decree by process against the defendant, neither the decree, nor any conveyance under it except by the party in whom title is vested, is of any efficacy beyond the jurisdiction of the court." (Syl. 1.) See also 27 C. J. S., Divorce, § 330, p. 1287.

The general rule is again stated in 17 Am. Jur., Divorce and Separation, § 449, p. 369:

"The rule is well established that in divorce proceedings the courts of one state cannot, by their decree, directly affect the legal title to land situated in another state, unless the decree is allowed that effect by the laws of the state in which the land is situated. The courts of one state may, however, by a decree in personam, indirectly affect interests in land in another state; such orders do not operate directly on the title to the land, but only through the act of the party of whom the court has jurisdiction, and are enforceable only by methods effective against the person, such as proceedings for contempt, etc."

We are of the opinion that had a request been made the trial court would have had the authority to compel plaintiff to convey her interest, if any, in the real estate in question to defendant because at the time of the trial the court had jurisdiction over the parties. It could have enforced that judgment by proceedings in contempt. However, if plaintiff had failed to execute the deed in compliance with the order of the court the judgment would have been inoperative as to conveying title to the property in Pennsylvania.

It follows that the judgment of the trial court is affirmed.

It is so ordered.