No. 114,210

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROGER ARNOLD,
*Appellant*,

v.

FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN,
*Appellee*.

SYLLABUS BY THE COURT

1.

A casualty property insurance policy was effectively canceled when the policy provided that proof of mailing is sufficient proof of notice and the insurer mailed notice of cancellation to the insured at the last address provided by the insured, despite the insured's claim he never received notice.

2.

When the language of a contract is clear and unambiguous, courts must give effect to the expressed intent of the parties and enforce the contract as written. A court may not rewrite a contract or make a new contract for parties under the guise of construing their agreement.

3.

Kansas law does not impose upon an insurer any duty to follow up on an uncashed refund check mailed to an insured.

1

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed June 24, 2016. Affirmed.

*Ryan E. Hodge*, of Ray Hodge & Associates, LLC, of Wichita, for appellant.

*Matthew A. Spahn and Stanford J. Smith, Jr.*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before GARDNER, P.J., LEBEN, J., and HEBERT, S. J.

GARDNER, J.: This case primarily asks whether an insured must receive actual notice of the insurer's cancellation of property casualty insurance before that cancellation is valid. Based on precedent which finds that an insurer's mailing of cancellation to the insured's last known address in accordance with the policy's requirements is sufficient and that actual notice is not necessary, we answer that question, "no." Although our precedent examines motor vehicle liability insurance policies, we believe that the rationale of those cases extends to the insurance policy at issue here. Accordingly, we affirm.

## PROCEDURAL BACKGROUND

The material facts are undisputed. In October 2012, Roger Arnold applied for a vacant house insurance policy. Foremost Insurance Company, Grand Rapids, Michigan (Foremost), issued him a "Dwelling Fire One Policy: Vacant or Occupied" and sent a copy of it to the Wichita, Kansas, mailing address Arnold had provided when he applied for insurance.

Arnold received the policy, which had a duration of 1 year, at his mailing address. It contained a specific provision regarding cancellation of the policy, stating:

"**Notice of Cancellation or Nonrenewal.** We will address the cancellation or nonrenewal notice to your address shown in the policy. . . . If notice is mailed, proof of mailing will be sufficient proof of notice."

Arnold paid the entire annual premium.

In December 2012, Foremost canceled Arnold's policy. Its notice of cancellation stated that the policy's coverage would end on January 14, 2013, at 12:01 a.m., and listed the reasons why the policy was being canceled. The notice also stated that if Arnold had already paid the entire premium, he would receive an adjusted refund check. Foremost mailed the notice of cancellation and the refund check to the same Wichita mailing address that Arnold had provided to Foremost. Arnold claims he never received the notice or the refund check, and the parties agree that the refund check has not been cashed.

In May 2013, the house the policy had covered was damaged by hail. Arnold filed a claim with Foremost soon thereafter. Foremost responded with a letter dated June 5, 2013, and sent to Arnold's same mailing address, stating the policy had been canceled and that it disclaimed coverage for his loss. Arnold responded that he had not received any cancellation notice or refund check, so Foremost sent him a second refund check, apparently to the same address it had used before. Arnold received this check but has not cashed it. Arnold paid almost $10,000 to repair the hail damage.

Arnold then sued Foremost for breach of contract, alleging it gave improper notice of cancellation and breached its duty to ask Arnold why he had not presented the refund check for payment. Arnold does not challenge Foremost's reasons for cancellation or its right to cancel his policy upon proper notice.

3

Both parties moved for summary judgment. After a hearing on the motions, the district court found that the public policy of Kansas no longer requires an insurer to give actual notice when canceling an insurance policy in accordance with its terms that require only mailing of a notice of cancellation and that Foremost did not have duty to follow up with Arnold when he failed to present the refund check for payment. As a result, the district court granted Foremost's motion for summary judgment and denied Arnold's motion. Arnold timely appeals.

## I.     DOES KANSAS LAW REQUIRE ACTUAL NOTICE?

We first examine Arnold's claim that summary judgment was erroneous because Kansas law requires actual notice of an insurance policy's cancellation. His argument is founded on *Koehn v. Central National Ins. Co.*, 187 Kan. 192, 354 P.2d 352 (1960), which held that actual notice was required. Arnold contends that more recent law contradicting *Koehn* is limited to automobile insurance policies and does not extend to property casualty insurance policies.

A. *Standard of Review*

A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2015 Supp. 60-256(c)(2). If reasonable minds can come to different conclusions based on the evidence, summary judgment must be denied. *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 (1999). Appellate courts apply the same rules. 266 Kan. at 871.

Here, the facts are undisputed and the only questions are questions of law. See *AT&SF Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 729, 71 P.3d 1097 (2003) (finding an insurance policy's interpretation is a question of law). Our review is thus unlimited.

4

*Lee Builder, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 849, 137 P.3d 486 (2006). Regardless of the district court's interpretation or construction, we may interpret or construe an insurance policy and determine its legal effect. *First Financial Ins. Co. v. Bugg*, 265 Kan. 690, 694, 962 P.2d 515 (1998).

B. Koehn

In *Koehn*, the Kansas Supreme Court considered whether a policyholder's actual receipt of a cancellation notice for an automobile policy was a prerequisite to that policy's cancellation under the "'standard cancellation clause.'" 187 Kan. at 193. That clause, much like the one in this case, read:

> "This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. *The mailing of notice as aforesaid shall be sufficient proof of notice . . .* the effective date and hour of cancellation stated in the notice shall become the end of the policy period." (Emphasis added.) *Koehn*, 187 Kan. at 193.

Our Supreme Court adopted the minority view that actual receipt of the cancellation notice by the policyholder is required before an insurer could cancel the policy. It expressly rejected the majority view that the insured's actual receipt of the cancellation notice was not a condition precedent to the cancellation of an insurance policy by the insurer. 187 Kan. at 195-96. The court's analysis was based on the policy language.

*Koehn* also found that interpreting the language otherwise would violate Kansas public policy. 187 Kan. at 202-03. Citing various Kansas statutes that indicated "a policy strongly favoring the protection of the public in the field of liability insurance coverage

5

for motor vehicle owners," it found "the overriding public policy of this state" favored actual notice:

> "'Clearly the object of the insured when he buys a policy of the kind involved here is to receive protection in order that he might fulfill his obligations to those he has injured or damaged through the use of his automobile. The provision in the policy providing for notice of cancellation is obviously to give the insured an opportunity to procure other insurance. If the policy can be canceled at any time by merely depositing notice in the mails with no regard to whether or not notice is actually received, then the object of the notice may be completely nullified and there may be no chance of fulfilling the object sought in obtaining the insurance."' *Koehn*, 187 Kan. at 202 (quoting *Donarski v. Lardy*, 251 Minn. 358, 88 N.W.2d 7 [1958]).

C. *Post-*Koehn *developments*

Fourteen years after *Koehn*, the Kansas Legislature enacted K.S.A. 40-3118(b), which relates to automobile liability insurance policies. This statute provides that a notice of nonrenewal will not be effective "until at least 30 days after mailing a notice of termination, by certified or registered mail or United States post office certificate of mailing, to the named insured." The plain language of the statute implies that a properly mailed notice of termination is effective. That statute reflects the public policy of the state. See *Whaley v. Sharp*, 301 Kan. 192, 199, 343 P.3d 63 (2014) (finding "the plain language chosen by the legislature governs unless there is an ambiguity, and we leave policy determinations to the legislature. Appellate courts do 'not decide nor weigh the beneficial results flowing from any particular legislative policy.' *Manzanares v. Bell*, 214 Kan. 589, 603, 522 P.2d 1291 [1974].").

Approximately 10 years after that statute's enactment, in *Richmeier v. Williams*, 9 Kan. App. 2d 222, 675 P.2d 372 (1984), the Kansas Court of Appeals reviewed a summary judgment which held that K.S.A. 40-3118(b) does not require actual receipt of

6

notice of cancellation for nonpayment of premiums. We analyzed insurance policy language essentially identical to that involved in the present case and held the insurance policy required actual notice although the statute did not. 9 Kan. App. 2d 222, Syl. ¶ 3. Relying on *Koehn*, we held the insurance company promised actual notice/receipt of the cancellation, and we found a genuine issue of material fact as to whether the insured had received notice of cancellation of the policy. 9 Kan. App. 2d at 224.

Two years later, in *Feldt v. Union Ins. Co.*, 240 Kan. 108, 110-11, 726 P.2d 1341 (1986), the Kansas Supreme Court examined the effect of that same statute. There, as here, the insurance company issued an insurance policy but a short time later sent the insured notice canceling the policy. Feldt was subsequently injured in an automobile accident, then sought a declaratory judgment that his insurance policy had not been effectively canceled because he had not received the cancellation notice. The sole issue on appeal was whether notice of cancellation of a motor vehicle liability insurance policy must be actually received by the insured before the policy is validly canceled. The court concluded that under K.S.A. 40-3118(b), which mirrored the policy's language regarding notice requirements, the insurer need only mail notice of termination to effectively terminate the policy, thus proof of receipt was not required. *Feldt*, 240 Kan. at 111. *Feldt* found it "obvious that the legislature chose to reject the common-law (and minority) rule requiring actual receipt of notice." 240 Kan. at 111. *Feldt* thus impliedly found that *Koehn* had been superceded by statute.

Thereafter, we expressly found that *Feldt* rejected *Koehn*'s rule as the public policy of the state and it held *Richmeier* was mere dicta. *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan. App. 2d 791, 793, 816 P.2d 407, *rev. denied* 249 Kan. 775 (1991). *Bell* recognized in hindsight that in *Richmeier*, by having relied on *Koehn*, "we rewrote the insurance policy for the parties in the guise of public policy." *Bell*, 15 Kan. App. 2d at 792. *Bell* held Kansas law did not require that notice of cancellation of a motor vehicle liability policy for nonpayment of premiums actually be received by the insured to

7

effectuate a valid cancellation of policy, where the policy stated that proof of mailing would be sufficient proof of notice. 15 Kan. App. 2d at 793-94.

When the legislature chose to change public policy, *Koehn*'s foundation collapsed, as the decisions in *Feldt* and *Bell* acknowledge. See 240 Kan. at 111 ("It is obvious the legislature chose to reject the common-law [and minority] rule."); 15 Kan. App. 2d at 793 ("The *Koehn* rule has been rejected as the public policy of this state."). "Under the constitution the Legislature is charged with statutorily enunciating public policy." 240 Kan. at 112. Because *Koehn*'s rule was based on public policy, which the legislature has changed, *Koehn* has effectively been invalidated.

More recently, the United States District Court for the District of Kansas found receipt of notice "immaterial" under Kansas law and applied *Feldt*'s analysis to nonrenewals for failing to pay premiums.

"Although it is unclear whether Defendants dispute that Briggs received the Notice, receipt of the notice is immaterial under Kansas law. The Kansas Supreme Court has unambiguously held that 'for a motor vehicle liability insurance policy to be effectively terminated, the insurer need only mail notice of termination by certified or registered mail or United States Post Office certificate of mailing to the insured at the last address provided by the insured.' The court continued by noting that '[t]he statute clearly does not require the insurer to provide proof of actual receipt by the insured.' Although *Feldt* dealt with the cancellation of an insurance policy, the court gave no indication that it would treat non-renewal differently. Moreover, the statute addresses 'termination by failure to renew,' and there is no reason for this Court to construe that language differently. Accordingly, the Notice was valid to effect non-renewal on September 3, 2008, when it was mailed by Nationwide on June 27, 2008." *Nationwide Mut. Ins. Co. v. Briggs*, No. 11-CV-2119-JTM-DJW, 2012 WL 928088, at *4 (D. Kan. 2012) (unpublished opinion), *aff'd* 555 Fed. Appx. 799 (10th Cir. 2014) (unpublished opinion).

D. *Viability of* Koehn*'s public policy analysis*

But the cases cited above all involved motor vehicle liability insurance policies. Arnold argues that *Koehn* still controls this property casualty insurance case because the court declared in *Koehn* a broad public policy covering all types of insurance and the legislature changed that public policy in K.S.A. 40-3118(b) solely as to motor vehicle liability insurance. See 187 Kan. at 202-03. Arnold notes that although other Kansas statutes permit mailing of various notices to the insured's last known address—see, *e.g.*, K.S.A. 40-1015 (cancellation of mutual fire and tornado insurance), K.S.A. 40-435 (group life insurance policy members entitled to notice of eligibility for individual policy of life insurance), no statute authorizes notice by mail for cancellation of property casualty insurance policies.

We are unpersuaded. First, Arnold's premise that *Koehn* declared a broad public policy covering all types of insurance is too broad. Arnold cites no case applying *Koehn*'s public policy rationale outside the context of motor vehicle liability insurance, and its language seems to limit its analysis to that kind of policy. See, *e.g.*, 187 Kan. at 202 ("'Clearly the object of the insured *when he buys a policy of the kind involved here . . . .*'" [Emphasis added.]); 187 Kan. at 203 (finding "a policy strongly favoring the protection of the public *in the field of liability insurance coverage for motor vehicle owners*" [Emphasis added.]).

Second, in the context of what type of notice is required to cancel an insurance policy, we find no meaningful difference between motor vehicle liability insurance and property casualty insurance. Why would our public policy reflected in our statutes find mailing of cancellations to be sufficient notice for motor vehicle liability insurance policies but insufficient notice for property casualty insurance policies? Arnold suggested at oral argument that the difference may be because motor vehicle liability insurance is required by law for all vehicles and property casualty insurance is not required for all

9

homeowners. But we find no good reason why that fact, even if true, would warrant a different public policy rationale.

We note that the Tenth Circuit Court of Appeals has not hesitated to apply *Feldt*'s rule, which rejected *Koehn*'s rule, outside the context of motor vehicle liability insurance. In *Federal Kemper Life Assur. Co. v. Ellis*, 28 F.3d 1033, 1039-40 (10th Cir. 1994), the plaintiff alleged the insurer had breached its contractual obligations to properly send premium due notices and lapse of policy notice. The Tenth Circuit held that under Kansas law, an insurer had no duty to ensure defendant actually received such notices for a life insurance policy, but only a duty to mail the notices to the defendant's address:

> "Defendant next contends that a genuine issue of material fact exists whether the March 1990 notice was mailed in compliance with the contract. Kemper had no duty to ensure defendant actually received the notice, but only to mail the notice to the defendant's address. *See*, *e.g.*, *Feldt v. Union Ins. Co.*, 240 Kan. 108, 726 P.2d 1341, 1343 (1986) (interpreting automobile liability insurance statute that requires only mailing of notice); *Bell v. Patrons Mut. Ins. Ass'n*, 15 Kan.App.2d 791, 816 P.2d 407, 408-09 (1991) (where policy provided that it could be cancelled by mailing notice to the named insured, court found that proof of mailing was sufficient; contract unambiguously required only mailing). Thus, the district court need only have determined if there was a material issue of fact whether the notice was *mailed.*" *Federal Kemper Life Assur. Co.*, 28 F.3d at 1039-40.

We would thus not be the first court to apply *Feldt* and *Bell* outside the context of motor vehicle policies.

E. *Canons of Contract Construction*

Most importantly, basic rules of contractual interpretation compel our conclusion.

10

"The rationale upon which the courts adhering to the [majority] rule base their holding is that the express terms of the contract uphold the sufficiency of a notice deposited in the mail, and that such provision, being unambiguous, must be enforced by the courts as written. It is said that where there is no statute upon the subject, the parties to the contract of insurance may agree as to the form and manner in which notice of cancellation shall or may be given; that when the parties to the contract have so agreed, they are both bound thereby, and the courts will not attempt to rewrite the contract for them nor interpolate the conditions which cannot be reasonably implied; and that when a cancellation notice is given in the manner provided in the policy, it constitutes sufficient notice, thereby canceling the policy and relieving the insurer from liability for any loss occurring thereafter. It is said that the parties, by their contract, in effect constitute the government, in its business of operating the mails, the agent of the insured for the purpose of receiving the notice of cancellation." *Koehn*, 187 Kan. at 196-97.

*Koehn*, decided in 1960, rejected that majority rationale, stating: "[T]his is, of course, a fiction." 187 Kan. at 197.

Later Kansas Supreme Court cases routinely gave full credence to the very canons of contract construction that *Koehn* dismissed as "fiction." See, *e.g.*, *Decatur County Feed Yard*, *Inc. v. Fahey*, 266 Kan. 999, 1005, 974 P.2d 569 (1999) (when language of contract is clear and unambiguous, courts must give effect to the expressed intent of parties and enforce the contract as written); *Quenzer v. Quenzer*, 225 Kan. 83, 85, 587 P.2d 880 (1978) (a court may not rewrite contract or make new contract for parties under guise of construing agreement); *Lauck Oil Co. v. Breitenbach*, 20 Kan. App. 2d 877, 879, 893 P.2d 286 (1995) (when contract is unambiguous, court's "function is to enforce the contract as made" and "not [to] make another contract for the parties.") We do the same.

The policy's cancellation provision was straightforward, clear, and unambiguous. It states:

11

"**Notice of Cancellation or Nonrenewal:** We will address the cancellation or nonrenewal notice to your address shown in the policy. Under the authority of federal law, the United States Postal Service and its authorized agents or vendors may forward the cancellation or nonrenewal notice to an updated address per any change of address that you have presented to or filed with the United States Postal Service. If notice is mailed, proof of mailing will be sufficient proof of notice."

The plain language of this policy unambiguously provides that if notice is mailed, proof of mailing is sufficient proof of notice. We are not at liberty to rewrite the contract to require more. Because the *Koehn* rule has been invalidated by *Feldt*, our state's public policy does not require a policyholder to have actual notice of the cancellation of an insurance policy. See 240 Kan. at 111-12.

To show that this contractual provision is void as against public policy, Arnold has the burden to show that the notice provision in question is arguably injurious to the interests of the public or contravenes some established interest of society.

""Public policy forbids enforcement of an illegal or immoral contract, but it equally insists that those contracts which are lawful and which contravene none of its rules shall be enforced, and that they shall not be set aside or held to be invalid on a suspicion of illegality. A contract is not void as against public policy unless injurious to the interests of the public or [it] contravenes some established interest of society [citation omitted]. Illegality from the standpoint of public policy depends upon the facts and circumstances of a particular case [citation omitted], and it is the duty of courts to sustain the legality of contracts where possible [citation omitted]. There is no presumption that a contract is illegal, and the burden of showing the wrong is upon him who seeks to deny his obligation thereunder. The presumption is in favor of innocence and the taint of wrong is a matter of defense [citations omitted].'" *Frazier*, 296 Kan. at 749 (quoting *In re Estate of Shirk*, 186 Kan. 311, 326, 350 P.2d 1 [1960])." *In re Marriage of Traster*, 301 Kan. 88, 104-05, 339 P.3d 778 (2014).

Arnold makes no public policy argument except that based on *Koehn*, so he fails to meet this burden. He has shown no compelling public policy of Kansas that could invalidate the contractual notice provision contained in this policy.

As the parties agree, no specific statute or regulation in Kansas pertains to the notice required to cancel property casualty insurance. Therefore, Foremost had to give only the notice required by the policy. According to the policy, proof that Foremost mailed the cancellation notice to Arnold at the address shown in the policy was sufficient to prove that Arnold had notice of the policy's cancellation. Arnold does not allege that a material question of fact remains as to whether Foremost correctly addressed, stamped, or mailed the notice. Thus, under the policy and under Kansas law, the notice is presumed to have been received by the addressee. See State *v. Hershberger*, 27 Kan. App. 2d 485, 495-96, 5 P.3d 1004 (citing *State v. Campbell*, 24 Kan. App. 2d 553, 556, 948 P.2d 684, *rev. denied* 263 Kan. 887 [1997]), *rev. denied* 269 Kan. 937 (2000). Arnold neither argues that this presumption was rebutted nor points to facts arguably sufficient to rebut this presumption.

Based on the undisputed facts, Foremost complied with the notice requirements of the insurance policy. Therefore, Arnold is deemed to have had sufficient notice of the policy's cancellation even if he never actually saw it.

## II.     DID FOREMOST HAVE A DUTY TO FOLLOW UP WITH ARNOLD?

Arnold next claims that summary judgment was inappropriate because a factual question remained whether Foremost breached its duty to "follow up on an un-negotiated refund check." Arnold vaguely asserts that Foremost should have contacted him after an unstated period of time when Foremost knew or should have known that Arnold had not cashed the refund check. Arnold's brief claims a "duty of reasonable care" arises from the insurance policy and from the industry standards of property casualty insurance.

13

At oral argument, Arnold shifted his argument to claim that the duty Foremost breached was the duty of good faith and fair dealing, which is inherent in nearly every contract. See *Estate of Draper v. Bank of America, N.A.*, 288 Kan. 510, Syl. ¶ 13, 205 P.3d 698 (2009). But Arnold did not brief this issue, so we find it waived and abandoned, even if it was raised in oral argument. See *Feldt*, 240 Kan. at 112. Accordingly, we decline to address the alleged breach of the duty of good faith and fair dealing, and we examine solely the issue briefed—whether Arnold presented a genuine issue of material fact that Foremost had a "duty of reasonable care."

A. *Standard of Review*

We apply the same summary judgment standard of review set forth above. See *Bergstrom*, 266 Kan. at 871. Further, whether a duty exists is a question of law; thus, this court's review is unlimited. *Berry v. National Medical Services*, *Inc.*, 292 Kan. 917, 920, 257 P.3d 287 (2011).

B. *Existence of duty*

Arnold first contends Foremost's duty of reasonable care "stems from the contract between the insurer and the insured." But Arnold does not point to any language in the policy that even arguably requires Foremost to follow up after it has mailed a refund check. As discussed, the cancellation terms in Arnold's insurance policy were straightforward, clear, and unambiguous. The policy specifically described the requirements that Foremost had to comply with when canceling the policy, and the undisputed facts show that Foremost complied with those requirements. Further, Arnold admitted in his summary judgment motion and in his response to Foremost's motion that the policy did not include "a provision requiring [Foremost] to inquire regarding the un-negotiated refund check." Because no facts show the insurance policy itself may have

expressly or impliedly imposed on Foremost a duty to follow up, Foremost's failure to do so does not prevent summary judgment on this unusual breach of contract claim.

Arnold next contends that industry standards of property casualty insurance created a duty to follow up. But Arnold does not show that industry standards can create legal duties or which industry standard arguably could have created such a duty here. Nor does he cite any authority in support of this assertion, so we find it has not been properly briefed. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013) (stating an argument unsupported by pertinent authority is deemed waived and abandoned).

Arnold mentions, but does not argue error in, the district court's denial of his request to obtain an expert to determine whether Foremost's delay in following up on the uncashed refund check was unreasonable or contrary to industry standards. We consider only those issues which Arnold has briefed and not those he has merely mentioned. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013). Because no claim of error is made in this regard and no proffer is included in the briefs, we find no facts precluding the entry of summary judgment. Accordingly, Arnold has not raised a material question of fact regarding industry standards' creation of a duty.

Finally, Arnold seems to suggest that the district court could have *sua sponte* found that Foremost had some duty to follow up, citing *Russell v. Braden*, 42 Kan. App. 2d 811, Syl. ¶ 2, 217 P.3d 997 (2009). In *Russell*, we found a parent has a duty to control a child to prevent injury to third persons, based on Kansas' adoption of a specific provision of the Restatement (Second) of Torts. But Arnold does not point to any tort or contract-based law that supports imposing any duty on an insurer to follow up in any manner on an uncashed refund check. *Russell* certainly fails to do so. Following up may be a good business practice, but nothing in Kansas law requires that an insurance company do so. We find no error in the district court's ruling that Arnold failed to raise a

15

genuine issue of material fact that Foremost had a duty to follow up on the uncashed refund check.

Accordingly, we affirm the district court's grant of summary judgment in favor of Foremost.

Affirmed.