No. 116,654

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHERI WARD,
f/k/a CHERI R. HAHN,
*Appellee*,

v.

CLIFFORD HAHN, IRIS A. HAHN,
and KIRK L. HAHN,
*Appellants*.

SYLLABUS BY THE COURT

1.

Any attempt by one state to give to its courts jurisdiction beyond its own limits of real property situated in another state is an usurpation of authority and all such judicial proceedings are void.

2.

In a divorce proceeding, the courts of one state cannot directly affect the legal title to land situated in another state unless allowed that effect by the laws of the state in which the land is situated. Kansas does not allow that effect.

3.

A sister state can indirectly affect title to land located in Kansas by ordering a litigant over whom it exercises personal jurisdiction to transfer title to another. If that party does not comply, the court may enforce its order by holding the disobedient party in contempt.

1

4.

When granting "comity," courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect.

5.

Comity differs from the application of the Full Faith and Credit Clause of the United States Constitution in that a state court has discretion to enforce a foreign judgment or order as a matter of comity but must give credit to a foreign judgment or order that is subject to full faith and credit without inquiry into the merits of the action.

6.

It is appropriate to exercise comity when a court recognizes the rights upon which a decree of a sister state is based and decides that the enforcement of such rights does not violate any principle of public policy of the forum court's state.

7.

Generally, the determination of whether to exercise comity is a matter of district court discretion that will be reversed only on a determination that discretion was abused.

8.

When public policy is not violated, the general rule is that a court should exercise comity over a foreign judgment or order to avoid expense, harassment, and inconvenience to the litigants.

9.

Kansas public policy is reflected in the laws of our State as found in our constitution, our statutes, and our judicial decisions.

10.

A Kansas district court may not enforce, under the principle of comity, a Nebraska district court's order purporting to directly transfer legal title to land situated in Kansas because doing so would violate Kansas public policy.

Appeal from Osborne District Court; PRESTON PRATT, judge. Opinion filed July 28, 2017. Reversed.

*Richard E. Dietz*, of Dietz & Hardman Law Office, of Osborne, for appellants.

*Terry L. Rogers*, of Terry L. Rogers Law Firm, of Lincoln, Nebraska, for appellee.

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

GARDNER, J.:  This appeal asks whether a Kansas district court may enforce, under the principle of comity, a Nebraska district court's direct assignment of title to Kansas real estate in a decree of dissolution of marriage. Because we find that doing so violates Kansas public policy, we reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Kirk Hahn and Cheri Ward were married to each other and lived together in Nebraska. Hahn owned a one-half undivided interest in real property located in Osborne County, Kansas. Title to his one-half undivided interest was in his name alone. Hahn's parents, Clifford and Iris Hahn, owned the other one-half undivided interest in that property.

When Ward filed for divorce in Nebraska, the Nebraska court equitably divided Hahn's and Ward's property and directly assigned the Kansas land to Ward. The Kansas district court's order found that Hahn "failed to sign a deed" and that Hahn "has failed to

3

. . . deed the . . . property to [Ward]." Ward's brief inaccurately characterizes this as Hahn's "refusal" to deed the property to Ward, as the record does not suggest that the Nebraska court ever ordered Hahn to do so. Instead, the Nebraska court directly awarded the Kansas property to Ward, stating: "The above-described real estate is now the property of [Ward]," and its order "shall be recorded in the real estate records of Osborne County, Kansas to effectuate the transfer of the . . . real estate to [Ward]."

Ward subsequently petitioned the Kansas district court to enforce the Nebraska district court's order and to partition the land between her and Hahn's parents. The district court acknowledged that the Nebraska district court did not have subject matter jurisdiction to directly transfer legal title of Kansas land to Ward and had erred in so doing. Accordingly, it found that the Nebraska district court's order assigning the Kansas real estate to Ward had no effect on the legal title to the Kansas real estate and was not entitled to enforcement under the Full Faith and Credit Clause of the United States Constitution. We note that only judgments entitled to full faith and credit in Kansas may be enforced under our Foreign Judgments Act, K.S.A. 60-3001 *et seq.*

Nonetheless, the district court enforced the Nebraska order under the principle of comity, stating: "The parties have given no reason, and this Court can think of no reason, why enforcing the Nebraska order would violate the public policy of Kansas." Accordingly, the district court partitioned the land, assigning a one-half undivided interest to Ward and the other one-half undivided interest to Clifford and Iris Hahn. The Hahns appeal.

The Hahns assert that the district court abused its discretion by enforcing the Nebraska property division under the doctrine of comity because allowing foreign courts to assign Kansas land is repugnant to Kansas public policy and would disrupt real estate markets. The parties agree that the Nebraska court had personal jurisdiction over Hahn

4

and could have ordered him to transfer the property to Ward, effecting an indirect transfer of title to the land.

### KANSAS FOLLOWS THE GENERAL RULE THAT A SISTER STATE CANNOT DIRECTLY TRANSFER TITLE TO LAND IN ANOTHER STATE

Kansas precedent on this issue, although time-honored, remains valid. In *Hoppe v. Hoppe*, 181 Kan. 428, 312 P.2d 215 (1957), a husband contended that the Kansas court erred in failing to set aside certain Pennsylvania real estate to him, citing the statute providing that when a divorce is granted the court shall make a just and reasonable division of the real and personal property. The Kansas Supreme Court rejected that argument in words which we set out at length due to their application here:

> "It was the intent of the Legislature that the court should make a division of only the property within its jurisdiction. Any attempt by one state to give to its courts jurisdiction beyond its own limits of real property situated in another state is an usurpation of authority and all judicial proceedings in virtue thereof are void, and a statute, however comprehensive, should not be construed as conveying such jurisdiction. In a divorce proceeding the courts of one state cannot by the decree directly affect the legal title to land situated in another state unless allowed that effect by the laws of the state in which the land is situated. (*Cummings v. Cummings*, 138 Kan. 359, 26 P.2d 440.) (See also Annotation, 51 A.L.R. 1081.)
>
> "One of the leading and exhaustive opinions on this subject is *Fall v. Fall*, 75 Neb. 104, 106 N.W. 412; Id., 75 Neb. 120, 113 N.W. 175; *Fall v. Eastin*, 215 U.S. 1, 54 L. Ed. 65, 30 S. Ct. 3, 23 L.R.A. (N.S.) 924, 17 Ann. Cas. 853, wherein it was stated by the United States Supreme Court that:
>
>> "'While a court of equity acting upon the person of the defendant may decree a conveyance of land in another jurisdiction and enforce the execution of the decree by process against the defendant, neither the decree, nor any conveyance under it except by the party in whom title is vested, is of any efficacy beyond the jurisdiction of the court.' (Syl. 1.) See also 27 C.J.S., Divorce § 330, p. 1287.

"The general rule is again stated in 17 Am. Jur., Divorce and Separation, § 449, p. 369:

"'The rule is well established that in divorce proceedings the courts of one state cannot, by their decree, directly affect the legal title to land situated in another state, unless the decree is allowed that effect by the laws of the state in which the land is situated. The courts of one state may, however, by a decree in personam, indirectly affect interests in land in another state; such orders do not operate directly on the title to the land, but only through the act of the party of whom the court has jurisdiction, and are enforceable only by methods effective against the person, such as proceedings for contempt, etc.'

"We are of the opinion that had a request been made the trial court would have had the authority to compel plaintiff to convey her interest, if any, in the real estate in question to defendant because at the time of the trial the court had jurisdiction over the parties. It could have enforced that judgment by proceedings in contempt. However, if plaintiff had failed to execute the deed in compliance with the order of the court the judgment would have been inoperative as to conveying title to the property in Pennsylvania." *Hoppe*, 181 Kan. at 432-33.

As the authorities above note, courts of one state generally cannot directly affect the legal title to land situated in another state. 181 Kan. at 433. Otherwise stated, the portion of the divorce decree which purports to act in rem so as to directly affect title to Kansas land is inoperative in Kansas.

Although Kansas has not revisited this issue recently, other states continue to apply that same time-honored rule:

"'[I]it is hardly a debatable question that the courts of a foreign [s]tate are without jurisdiction *to vest and divest title* to lands in this State.' *Clouse v. Clouse*, 207 S.W.2d 576, 579 (Tenn. 1948) (emphasis added); *see also Cory v. Olmstead*, 290 S.W. 31, 32 (Tenn. 1926) ('a court of one state is without jurisdiction to pass title to lands lying wholly in another state.'); *International Shoe Co. v. Washington*, 326 U.S. 310, 316

6

(1945). Illinois also recognizes this well-established rule. *In re Marriage of Miller*, 438 N.E.2d 939, 942 (Ill. App. Ct. 1982)." *Claborn v. Claborn*, No. E2014-01683-COA-R3-CV, 2015 WL 5692547, at *3 (Tenn. App. 2015) (unpublished opinion).

See also *Wacker Oil, Inc. v. LoneTree Energy, Inc.*, 459 N.W.2d 381, 382 (N.D. 1990) (a court decree or court judgment of another state in its determination of property rights may not directly affect or transfer title to real property located in North Dakota).

### *A Sister State May Indirectly Transfer Title to Land in Another State*

A sister state may, however, indirectly affect title to land located in another state by ordering a litigant over whom it exercises personal jurisdiction to transfer title to another. If that party does not comply, the court may enforce its order by holding the disobedient party in contempt. *Hoppe*, 181 Kan. at 433. The distinction between the in rem and in personam acts makes good sense:

> "[A] deed or other instrument executed by an owner in obedience to a court decree affecting title to lands in a state other than the forum state is recognized and given effect in the situs state. The jurisdiction over the person gives jurisdiction to require the person to act. When a person acts under court order there is no duress. The deed or other instrument transferring title is the act of the owner of the title, not the act of the court. The rights created by such instruments are rights created by the owner of the title, and therefore are and should be recognized by all courts." *McElreath v. McElreath*, 162 Tex. 190, 215, 345 S.W.2d 722 (1961) (Griffin, J., dissenting).

### *The Record Reflects No Indirect Transfer Here*

At oral argument, Ward's counsel suggested that the Nebraska court not only attempted to directly transfer title, but also indirectly transferred title either by specifically ordering Hahn to execute the deed, or by generally ordering Hahn to execute all papers necessary to give effect to the court's orders. But no such argument is arguably

7

included in Hahn's brief. "The general rule is that where the appellant fails to brief an issue, that issue is waived or abandoned. *Puritan-Bennett Corp. v. Richter*, 235 Kan. 251, 255, 679 P.2d 206 (1984)." *Feldt v. Union Ins. Co.*, 240 Kan. 108, 112, 726 P.2d 1341 (1986). This is so even if the issue was raised in oral argument. *Arnold v. Foremost Insurance Co.*, 52 Kan. App. 2d 833, 843, 379 P.3d 391 (2016). We apply that rule here.

Further, we find no factual support whatsoever for this argument either in the Nebraska court's original order dividing property or in its nunc pro tunc order regarding the real estate in question. Nothing in the scant record suggests the Nebraska court ordered Hahn to transfer the property to Ward. And given the court's purported direct transfer of title, ordering Hahn to sign the deed would have been superfluous.

Accordingly, the Nebraska court cannot directly affect legal title to land situated in Kansas unless allowed that effect by the laws of the state of Kansas. Kansas does not allow that effect. *Hoppe*, 181 Kan. at 433. See *Stricklin v. Snavely*, 175 Kan. 253, 256, 262 P.2d 823 (1953) (recognizing rule); *Rodgers v. Rodgers*, 56 Kan. 483, Syl. ¶ 2, 43 P. 779 (1896) (recognizing rule). The Nebraska Supreme Court applies the same rule that courts of sister states "cannot directly affect or determine the title to real property located in another state." *Weesner v. Weesner*, 168 Neb. 346, 355, 95 N.W.2d 682 (1959). Nebraska courts will, however, enforce decrees of sister states ordering litigants to convey real property located in Nebraska if the rendering court had personal jurisdiction over the litigant. 168 Neb. at 357. Therefore, Nebraska law and Kansas law are in accord concerning a sister state's ability to transfer title to real property located in another state. See *Hoppe*, 181 Kan. at 428-33.

THE DISTRICT COURT ABUSED ITS DISCRETION BY ENFORCING THE NEBRASKA
PROPERTY DIVISION UNDER THE DOCTRINE OF COMITY

The primary issue on appeal is whether the Kansas district court erred in applying the doctrine of comity to permit the Nebraska divorce court to directly transfer title to the Kansas real estate. Generally, "[t]he determination of whether to exercise comity is a matter of district court discretion that will only be reversed on a determination that discretion was abused. [Citation omitted.]" *Padron v. Lopez*, 289 Kan. 1089, 1108, 220 P.3d 345 (2009) (finding no abuse of discretion in the district court's refusal to enforce a Florida ex parte temporary injunction under comity when the Florida judgment was against Kansas public policy because it altered, rather than preserved, the status quo). A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 106 (2013).

The principle of comity permits a court to enforce a foreign judgment even though the court is not required to do so under the Full Faith and Credit Clause.

> "When granting comity, courts of one state give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect. *Head v. Platte County, Mo.,* 242 Kan. 442, Syl. ¶ 2, 749 P.2d 6 (1988); *Boyce v. Boyce,* 13 Kan. App. 2d 585, 590, 776 P.2d 1204, *rev. denied* 245 Kan. 782 (1989). In other words, comity differs from the application of the Full Faith and Credit Clause in that a state court *must* give credit to a foreign judgment or order that is subject to full faith and credit without inquiry into the merits of the action, but a foreign judgment or order *may* be enforced as a matter of comity. *Rich v. Con-Stan Industries,* 449 S.W.2d 323, 327 (Tex. Civ. App. 1969).
>
> "It is appropriate to exercise comity when a court recognizes the rights upon which a decree of a sister state is based and decides that the enforcement of such rights does not violate any principle of public policy of the forum court's state. Where public policy is not violated, it is generally recognized that a court should exercise comity over a

foreign judgment or order in order to avoid expense, harassment, and inconvenience to the litigants. *Perrenoud v. Perrenoud,* 206 Kan. 559, 573, 480 P.2d 749 (1971); *In re Marriage of Laine,* 34 Kan. App. 2d 519, 523, 120 P.3d 802 (2005), *rev. denied* 281 Kan. 1378 (2006); *Rich,* 449 S.W.2d at 327." *Padron*, 289 Kan. at 1108.

Accordingly, our determination of whether the district court appropriately exercised comity is twofold: We first ask whether our court recognizes the rights upon which the Nebraska court's decree is based and, if so, we then ask whether the enforcement of that right would violate any principle of public policy of Kansas.

KANSAS DOES NOT RECOGNIZE THE SPECIFIC RIGHT UPON WHICH THE NEBRASKA COURT'S DECREE IS BASED

It is well settled that Kansas courts generally recognize the rights on which a sister state's divorce decrees are based. See *In re Marriage of Laine*, 34 Kan. App. 2d 519, 524-25, 120 P.3d 802 (2005). Kansas public policy is to "recognize decrees of divorce of sister states as being effectual to terminate the marital relation of the parties where such decree is procured in harmony with the laws of the state where it is rendered." *Perrenoud v. Perrenoud*, 206 Kan. 559, 571, 480 P.2d 749 (1971). Generally, a "divorce decree valid in the state of rendition is valid everywhere, and a decree void in the state of rendition is void everywhere." 206 Kan. at 569. Similarly, Kansas courts generally recognize the rights of divorcing parties to a just and equitable division of property. See *In re Marriage of Traster*, 301 Kan. 88, 339 P.3d 778 (2014). We thus have no hesitancy in concluding that Kansas courts generally recognize the above rights on which the Nebraska dissolution decree is based.

But the specific right of a divorcing party to have the district court in one state directly transfer title to real estate in another state is not among the rights recognized by Kansas courts. See *Hoppe*, 181 Kan. at 428-33. Instead, any such attempt is an usurpation

10

of authority and all such judicial proceedings are void. *Hoppe*, 181 Kan. at 428-33. Nor is that right recognized by Nebraska courts. See *Weesner*, 168 Neb. at 355-57 (finding "it is universally held that a court of one state cannot directly affect or determine the title to land in another state," thus the part of a Wyoming divorce decree which awarded and attempted to directly convey real property in Nebraska was void and of no force and effect).

*Enforcement of that Right Would Violate the Public Policy of Kansas*

The question of whether the Nebraska decree violates Kansas public policy is already answered by the discussion above, which finds that our State deems a sister state's direct transfer of legal title to Kansas real estate to be void and of no effect. The record shows that the Nebraska court directly affected the legal title to land situated in Kansas by awarding the property to Ward and ordering that its award be recorded in the real estate records of Osborne County, Kansas, to effectuate the transfer of the real estate to Ward. In so doing, the Nebraska judgment squarely conflicts with Kansas law which prohibits sister states from directly affecting title to Kansas land. See *Hoppe*, 181 Kan. at 428-33.

The Kansas district court afforded the Nebraska judgment comity because it determined that doing so would not violate Kansas public policy. But Kansas public policy is found in our constitution, our statutory enactments, and our judicial decisions. See *Petty v. City of El Dorado*, 270 Kan. 847, 854, 19 P.3d 167 (2001) ("The public policy of a state is the law of that state as found in its constitution, its statutory enactments, and its judicial decisions."). And our judicial decisions unambiguously hold that a sister state cannot directly affect title to Kansas land, as "[a]ny attempt by one state to give to its courts jurisdiction beyond its own limits of real property situated in another state is an usurpation of authority and all judicial proceedings in virtue thereof are void." *Hoppe*, 181 Kan. at 432-33. See generally *Head v. Platte County, Mo.*, 242 Kan. 442,

11

448, 749 P.2d 6 (1988) (finding principles of judicial comity did not require Kansas to recognize a sister state's attributes of sovereign immunity; holding "that the public policy of this state is that a sister state is sovereign only within its own boundaries, and its immunity laws have no extraterritorial force."); *Rochester v. Express Co.*, 87 Kan. 164, 170, 123 P. 729 (1912) (noting comity should not be used to "'*toll, entice, and coax* jurisdiction from our sister's courts, thereby (under a mask of courtesy) draining jurisdiction away from them by an enlarged and alluring interpretation in our own'") (quoting *Newlin v. Railroad*, 222 Mo. 375, 392, 121 S.W. 125 [1909]); *Eddie v. Eddie*, 8 N.D. 376, 79 N.W. 856, 857 (1899) ("Comity between states has not gone to the extent of recognizing the right of one state to designate the persons to whom realty situate in another state shall descend, and doubtless never will.").

"The principle of comity . . . has several important exceptions and qualifications. A decree of divorce will not be recognized by comity . . . where the divorce offends the public policy of the state in which recognition is sought, or where the foreign court lacked jurisdiction." *Litvaitis v. Litvaitis*, 162 Conn. 540, 545, 295 A.2d 519 (1972). See *State v. Central Council of Tlingit and Haida Indian Tribes of Alaska*, 371 P.3d 255, 266 (Alaska 2016) (same); *Ashfaq v. Ashfaq*, 467 S.W.3d 539, 542 (Tex. App. 2015) (same). The Nebraska court lacked the power to directly affect the title of real property in Kansas, and its decree attempting to do so should not be given effect in Kansas based on comity. The district court made a mistake of law and thus abused its discretion by finding that enforcing the Nebraska order would not offend Kansas public policy.

We find it unnecessary to reach the Hahns' argument that allowing sister states to directly affect title to Kansas land could negatively affect the Kansas real estate market.

Reversed.